IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 13, 2001

## RICKEY STEPHAN COTTEN v. TENNESSEE BOARD OF PAROLES

**Appeal from the Circuit Court for Davidson County**
**No. 01C-680     Walter C. Kurtz, Judge**

---

### No. M2001-00875-COA-R3-CV - Filed July 12, 2002

---

Petitioner was arrested in Florida for grand theft auto while on parole under a sentence in Tennessee. After beginning his sentence on the Florida conviction in a Florida prison, the Petitioner filed a "request for leave to waive revocation hearing, admission to violation of parole and request to have parole hearing in absentia and affidavit" with the Board of Paroles of Tennessee. The Board did not respond, so Petitioner filed a writ of mandamus with the Circuit Court for Davidson County to compel the Board to render a decision regarding his parole revocation. The trial court denied the writ and dismissed the petition because mandamus was not the appropriate remedy and the Petitioner was not in custody of the State of Tennessee for the purposes of parole revocation. We agree and affirm the decision of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
### Affirmed and Remanded

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM C. KOCH, JR., J., joined.

Rickey S. Cotten, Lowell, Florida, Pro Se.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Quisha A. Light, Assistant Attorney General, for the appellee, Tennessee Board of Probation and Paroles.

### OPINION

This appeal arose after the Circuit Court for Davidson County dismissed a petition filed by Rickey S. Cotten for issuance of a writ of mandamus against the Tennessee Board of Paroles ("Board"). The petition requested that the court order the Board to grant Mr. Cotten's demand for waiver of a parole violation hearing, and that the Board sentence him *in absentia* for a pending parole violation. The trial court dismissed the petition *sua sponte*, because a writ of mandamus was not the appropriate remedy when the Board did not have custody of Mr. Cotten and, therefore, was under no duty to provide him with a parole revocation hearing.

## I. Facts

Mr. Cotten is an inmate currently in the custody of the Florida Department of Correction. In 1987, Mr. Cotten was found guilty and sentenced on burglary charges in both Davidson and Sumner County, Tennessee, receiving a sentence in excess of 23 years. He was released on parole by the State of Tennessee in October of 1997, remaining under the supervision of the Northeast Correctional Center.

On January 14, 1998, while on parole from his Tennessee sentence, Mr. Cotten was arrested for grand theft auto in Orlando, Florida. The Tennessee Board of Paroles issued a warrant on January 20, 1998, based on information Mr. Cotten had violated his parole and declaring him a fugitive from justice. On March 23, 1998, a Florida court issued an order to hold and deliver Mr. Cotten on the charge of parole revocation. Because Mr. Cotten was then in custody in a Florida jail pending disposition of the auto theft charge, he was not then delivered to Tennessee authorities.

On May 28, 1998, Mr. Cotten entered a plea of *nolo contendere* to the grand theft auto charge. In July of 1998, Mr. Cotten was sentenced on the grand theft auto charge to seven and a half (7 1/2) years in the Florida Department of Correction with 135 days of jail credit. The order issued by the Florida court specified that the sentence was to run concurrently with any sentence Mr. Cotten received as a result of the pending parole revocation case in Tennessee.

In 1999, Mr. Cotten sought a transfer to a Tennessee prison, but was denied that transfer due to overcrowding in Tennessee jails and a statewide freeze on the transfer of out-of-state prisoners. Thereafter, Mr. Cotten filed a "request for leave to waive revocation hearing, admission to violation of parole and request to have parole hearing in absentia and affidavit" with the Board. His request to the Board contained the following: (1) a statement of the facts leading up to the issuance of the parole revocation warrant from Tennessee; (2) allegations that he possessed a "bona fide right and genuine interest in a timely disposition of the pending parole violation charges according to Tenn. Code Ann. § 40-28-122"; (3) a request that the Board allow him to waive the right to be present at the revocation hearing and sentencing; and (4) a proposal that the Board allow any sentence he received as a result of his parole revocation to run concurrently with his Florida sentence. Mr. Cotten also attached an affidavit which merely reiterated the factual allegations encompassed in his request to the Board. He received no response to this request even after sending three letters[1] to the Director of the Board.

Mr. Cotten then filed a petition for writ of mandamus, asking the court to order the Board to grant his request for waiver of a parole violation hearing and sentence him *in absentia*. Specifically, his petition alleges that Tenn. Code Ann. § 40-28-122(b) and (c) and the Due Process Clause of the Fourteenth Amendment entitle him to a timely response and/or disposition of his

---

[1]One of the letters was sent prior to the "request for leave to waive revocation hearing, admission to violation of parole and request to have parole hearing in absentia and affidavit." The two remaining letters were sent subsequent to this request.

request "by virtue of the lawful execution of the parole violation warrant on March 19, 1998"; that he has waited more than a reasonable amount of time for the Board to act on his request; and that he has diligently sought resolution of the matter with the Board.

The trial court dismissed the case citing Tenn. Code Ann. § 40-28-112[2] and *Moody v. Daggett*, 429 U.S. 78, 97 S. Ct. 274 (1976), stating that:

> *Moody* held that there is no constitutional duty to provide an adversary parole hearing until the individual is taken into custody as a parole violator. The defendant here has no legal duty to provide the petitioner with a parole revocation hearing at this time. It is not under that duty until petitioner is returned to Tennessee. This case is clearly not appropriate for mandamus. *See, e.g., Speakman v. State of Ohio*, 520 N.E.2d 600 (Ohio App. 1987). The Court is aware that the petitioner contends that he was 'served' with a parole violation warrant in Florida. While the Court doubts the accuracy of that allegation, the Court is aware that the allegations in the petition must be assumed as true. There is no doubt, however, that the petitioner is not within the custodial control of the State of Tennessee. He is not, therefore "in custody" for purposes of the parole violation warrant.

Mr. Cotten filed a timely notice of appeal with this court, and has presented his issues in a well-organized and well-written brief. Resolution of the issues he raises depends upon the duty of the Board to a parolee in Mr. Cotten's situation.

## II. Writ of Mandamus

The writ of mandamus is an extraordinary remedy. *Peerless Constr. Co. v. Bass*, 158 Tenn. 518, 522, 14 S.W.2d 732,733 (1929); *State v. Thompson*, 118 Tenn. 571, 102 S.W. 349 (1907); *State ex rel. Witcher v. Bilbrey*, 878 S.W.2d 567, 570 (Tenn. Ct. App. 1994). Its purpose is to enforce a clearly established legal right, *State v. Irick*, 906 S.W.2d 440, 442 (Tenn. 1995), or to compel a public official to perform his or her legal duties. *State ex rel. Ledbetter v. Duncan*, 702 S.W.2d 163, 165 (Tenn. 1985). Therefore, to obtain the writ of mandamus, the petitioner must show a specific and complete right which is to be enforced. *Winters v. Burfurd*, 46 Tenn. (6 Cold.) 328, 330-31(1869); *Hayes v. Civil Serv. Comm'n of Metro. Gov't*, 907 S.W.2d 826, 829 (Tenn. Ct. App. 1995).

Mandamus cannot be used to control a public official's judgment or discretion. *State ex rel. Harned v. Meador*, 153 Tenn. 634, 640, 284 S.W. 890, 892 (1926); *Hackett v. Smith County*, 807 S.W.2d 695, 698 (Tenn. Ct. App. 1990). It serves only to control ministerial acts. *Waters v. State*,

---

[2]The trial court cited Tenn. Code Ann. § 40-28-112 in its Final Order which addresses "compensation of the board and employees," however, this was obviously a typographical error. In reading the full text of the Order of the trial court, we have no doubt that the court intended to cite Tenn. Code Ann. § 40-28-122 addressing "hearings on parole violations" as the statute on which it based its finding.

583 S.W.2d 756, 763 (Tenn. 1991). Thus, the writ cannot be used to compel a public official to perform a discretionary act or to perform a discretionary act in a particular way. *State ex rel. Byram v. City of Brentwood*, 833 S.W.2d 500, 505 (Tenn. Ct. App. 1991). A writ of mandamus is proper only when nothing is left to the public official's judgment. *Tusant v. City of Memphis*, 56 S.W.3d 10, 18 (Tenn. Ct. App. 2001).

Mr. Cotten argues that he has a constitutionally protected right to a revocation hearing within a reasonable time of the service of a parole revocation warrant and that Tenn. Code Ann. § 40-28-122 requires the Board to hold such a hearing within a reasonable time.

### III. When Must Hearing Be Held

The Board is "charged with determining whether violation of parole conditions exists in specific cases and of deciding the action to be taken in reference to such violation." Tenn. Code Ann. § 40-28-118(c). Revocation is initiated by the issuance of a warrant for "the retaking" of a parolee if the director of the Board determines that parole may have been violated in an important respect. Tenn. Code Ann. § 40-28-120. The warrant is executed "by taking the prisoner and returning the prisoner to a prison, workhouse or jail to be held to await the action of the board." Tenn. Code Ann. § 40-28-121(a).

After those steps, parole revocation in Tennessee is generally a two-stage process. The first stage is a preliminary hearing to determine whether there is probable cause to believe that the parolee has violated the conditions of his parole in an important respect.[3] The requirement of a preliminary hearing is triggered by the arrest of a parolee pursuant to execution of a parole violation warrant. Tenn. Code Ann. § 40-28-121(c).

The second stage is a final hearing to determine whether revocation is warranted. The procedure for hearings on parole violations is set forth in Tenn. Code Ann. § 40-28-122, which, in pertinent part, states:

> (b) After being notified that a [parole revocation] warrant has been executed and a probable cause hearing has been held or waived, the board shall, as soon as practicable, hold a parole revocation hearing and consider the case of such parole violator, who shall be given an opportunity to appear personally before a board member or hearing officer and explain the charges made. A probable cause hearing shall not be necessary if a parole revocation hearing is held within fourteen (14) days of the service of the warrant.
>
> . . . .

---

[3]Indictment, a finding of probable cause, or conviction in any court of competent jurisdiction for any crime committed after parole constitutes probable cause, and "no further proof shall be necessary at the preliminary hearing." Tenn. Code Ann. § 40-28-121(c).

(d) The board shall, within a reasonable time, act upon such charges, and may, if it sees fit, require such prisoner to serve out in prison the balance of the maximum term for which the prisoner was originally sentenced, calculated from the date of delinquency or such part thereof, as it may determine, or impose such punishment as it deems proper, subject to the provisions of § 40-28-123.[4]

The trial court cited *Moody v. Daggett*, 429 U.S. 78, 89, 97 S. Ct. 274, 280 (1976), for the proposition that there is no "constitutional duty to provide an adversary parole hearing until the individual is taken into custody as a parole violator." In *Moody*, the issue before the Supreme Court was "whether a federal parolee imprisoned for a crime committed while on parole is constitutionally entitled to a prompt parole revocation hearing when a parole violator warrant is issued and lodged with the institution of his confinement but not served on him." *Id*. 429 U.S. at 79, 97 S. Ct. at 275.

Moody was convicted in 1962 for rape on an Indian reservation and sentenced to a ten (10) year prison sentence. He was paroled in 1966 and a few years later pled guilty to killing two (2) people on an Indian reservation, including one count of manslaughter and one count of second-degree murder. Moody received concurrent ten (10) year sentences on the new crimes. The United States Board of Paroles issued, but did not execute a parole violator warrant. It was lodged as a detainer. Moody then petitioned the Board for immediate action so that he could serve the time he would receive on his parole violation concurrently with the murder and manslaughter convictions. The Board replied, stating that it would execute the parole violation warrant upon Moody's release from the second conviction. Moody then filed a habeas corpus action seeking dismissal of the parole violation warrant because he was denied a prompt hearing. The District Court dismissed the petition *sua sponte*. The Supreme Court held that Moody was not deprived of any constitutionally protected rights by the mere issuance of a parole violator warrant and that the Board had no constitutional duty to provide Moody with a parole hearing until he was taken into custody as a parole violator by execution of the warrant. *Id*. The Court stated:

> In *Morrissey*, we held that the conditional freedom of a parolee generated by statute is a liberty interest protected by the Due Process Clause of the Fourteenth Amendment which may not be terminated absent appropriate due process safeguards. The revocation hearing mandated by *Morrissey* is bottomed on the parallel interests of society and the parolee in establishing whether a parole violation has occurred and, if so, whether under all the circumstances the quality of that violation calls for parole revocation. The issue before us here, however, is not whether a *Morrissey*-type

---

[4]Under the provisions of Tenn. Code Ann. § 40-28-123(a):

If any prisoner while on parole from a state prison, jail or workhouse commits a crime under the laws of another state government or country which, if committed within this state, would be a felony, and is convicted of such crime, the director of probation and parole shall arrange for the return of such a prisoner through the terms of the interstate compact. The board shall require that the prisoner serve the portion remaining of the maximum term of sentence or such part as the board may determine.

hearing will ever be constitutionally required in the present case, but whether a hearing must be held at the present time, before the parolee is taken into custody as a parole violator. We hold that there is no requirement for an immediate hearing.

Petitioner's present confinement and consequent liberty loss derive not in any sense from the outstanding parole violator warrant, but from his two 1971 homicide convictions. Issuance of the warrant and notice of that fact to the institution of confinement did no more than express the Board's intent to defer consideration of parole revocation to a later time. Though the gravity of petitioner's subsequent crimes places him under a cloud, issuance of the warrant was not a determination that petitioner's parole under his 1962 rape conviction will be revoked; the time at which the Commission must make that decision has not yet arrived. With only a prospect of future incarceration which is far from certain, we cannot say that the parole violator warrant has any present or inevitable effect upon the liberty interests which *Morrissey* sought to protect. Indeed, in holding that '[the] revocation hearing must be tendered within a reasonable time after the parolee is taken into custody,' *Morrissey*, 408 U.S. at 488, we established execution of the warrant and custody under that warrant as the operative event triggering any loss of liberty attendant upon parole revocation. This is a functional designation, for the loss of liberty as a parole violator does not occur until the parolee is taken into custody under the warrant.

. . . His [Moody's] real complaint is that he desires to serve his sentence for the 1962 rape conviction concurrently with his sentences for two 1972 homicides. But, as we have noted, even after completion of the homicide sentences the Commission retains full discretion to dismiss the warrant or decide, after hearing, that petitioner's parole need not be revoked. If revocation is chosen, the Commission has power to grant, retroactively, the equivalent of concurrent sentences and to provide for unconditional or conditional release upon completion of the subsequent sentence. *See* 18 U.S.C. §§ 4211, 4214(d) (1976); 28 CFR §§ 2.21, 2.52(c) (2) (1976). Thus, deferral of the revocation decision does not deprive petitioner of any such opportunity; nothing in the statute or regulations gives him any 'right' to force the decision of the Commission at this time.
        . . . .

Finally, there is a practical aspect to consider, for in cases such as this, in which the parolee admits or has been convicted of an offense plainly constituting a parole violation, the only remaining inquiry is whether continued release is justified notwithstanding the violation. . . . Given the predictive nature of the hearing, it is appropriate that such hearing be held at the time at which prediction is both most relevant and most accurate - at the expiration of the parolee's intervening sentence.

*Moody*, 429 U.S. at 85-9, 97 S. Ct. 278-80 (footnotes omitted).

While due process requires that a person accused of violating parole receive a revocation hearing within a reasonable time after being taken into custody, *Morrissey v. Brewer*, 908 U.S. 471, 488, 92 S. Ct. 2593, 2604 (1972), that "reasonable time" does not begin to run until custody begins on the alleged parole violation. Thus, due process is triggered only when the parolee is taken into custody for the parole violation, rather than when the warrant or detainer is lodged. The issuance of a warrant and the lodging of a detainer while the person is incarcerated elsewhere for a separate crime, do not constitute being taken into custody. *Moody*, 429 U.S. at 86-87; *United States v. Tippens*, 39 F.3d 88, 90 (5th Cir. 1994); *United States v. Chaklader*, 987 F.2d 75, 77 (1st Cir. 1993).

Similarly, under state statute, the Board's obligation to hold a revocation hearing "as soon as practicable" is triggered by "execution" of a parole violation warrant. Tenn. Code Ann. § 40-28-122(b), and "execution" occurs when a parolee is taken into custody on the basis of the warrant, Tenn. Code Ann. § 40-28-121(a). It is the deprivation of liberty consequent to execution of the warrant which triggers the timing of the hearing under both due process and the statute.

Mr. Cotten is not in custody because of the parole revocation warrant. Instead, he is in custody of Florida correctional officials because he is serving a sentence for a felony committed in Florida. His liberty, therefore, is not currently curtailed because of any action or inaction by the Board. Consequently, Mr. Cotten cannot show a clearly established, specific, or complete legal right. Neither can he show that the Board has failed to perform a nondiscretionary duty. Therefore, his action for mandamus was appropriately dismissed.

## IV. Right to Concurrent Sentences

Mr. Cotten alleges that he is being deprived of due process rights because, depending on the punishment issued by the Board, he will not have the opportunity to serve any time received on the parole violation warrant concurrently with his Florida sentence until the Board holds a parole revocation hearing. Mr. Cotten's goal is that the Board revoke his parole and impose the sentence as soon as possible so that he can serve both his Florida sentence and his Tennessee sentence concurrently. "The Due Process Clause applies when government action deprives a person of liberty or property; accordingly, when there is a claimed denial of due process we have inquired into the nature of the individual's claimed interest." *Greenholtz v. Inmates of the Neb. Penal and Corr. Complex*, 442 U.S. 1, 7, 99 S. Ct. 2100, 2103 (1979). In determining if one's due process rights have been violated, we must decide if he has a "legitimate claim of entitlement to it." *Id.* (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709 (1972)).

We first note that the judgment of the sentencing Florida court does not determine how the Tennessee sentence will be imposed or served. *Beaucamp v. Tennessee Bd. of Paroles*, No. M1998-00960-COA-R3-CV, 2001 Tenn. App. LEXIS 884, at *11 (Tenn. Ct. App. Dec. 5, 2001) (no Tenn. R. App. P. 11 application filed). The Board is vested with the duty and authority to decide what action should be taken if parole is violated, Tenn. Code Ann. § 40-28-118(c), and "if it sees fit, [to] require such prisoner to serve out in prison the balance of the maximum term for which the prisoner

was originally sentenced . . . ." Tenn. Code Ann. § 40-28-122(d). The Board's discretion is further guided by Tenn. Code Ann. § 40-28-123, quoted in footnote 4.

Mr. Cotten has no legitimate claim of entitlement to concurrent sentences or to an early revocation determination. The same argument was raised in *Moody v. Daggett*, and the U.S. Supreme Court found nothing in the relevant statutes gave the parolee the "right" to force a revocation decision while he was serving a sentence for another crime. *See also Tippens*, 39 F.3d at 90; *United States v. Fisher*, 895 F.2d 208, 211 (5th Cir. 1990). Similarly, we find no authority, statutory or otherwise, that gives Mr. Cotten the same right.

## V. Conclusion

Mr. Cotten has failed to show that he has been deprived of a specific, complete right as a result of the Board's failure to hold a parole revocation hearing during his incarceration in a Florida prison for a crime he committed while on parole. He has also failed to show that the Board has a nondiscretionary duty to hold the hearing or revoke his parole before he has completed his Florida sentence. The Board has the authority and discretion to set the parole hearing at the expiration of Mr. Cotten's Florida sentence. Mr. Cotten is not incarcerated at this time because of the parole revocation warrant. Accordingly, we affirm the decision of the trial court and remand the case for any further proceedings consistent with this opinion which may be necessary. The costs of this appeal are taxed to Rickey Stephan Cotten, for which execution may issue if necessary.


PATRICIA J. COTTRELL, JUDGE